UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RACHEL ROBLEDO,

   **Plaintiff,**        **Case No. 8:25-cv-0609-WFJ-SPF**

**v.**

CITY OF TAMPA, et al.

   **Defendants.**

_____/

## DEFENDANT, CITY OF TAMPA'S
## MOTION TO DISMISS AND MEMORANDUM OF LAW

Defendant, CITY OF TAMPA, by and through undersigned counsel, hereby moves this Court to Dismiss the Complaint (**Dkt. 1**) pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01 and in support thereof would state:

## INTRODUCTION

On **March 13, 2025**, Plaintiff, Rachel Robledo ("hereinafter Plaintiff or Robledo") filed a Complaint that named the City and (6) police officers as Defendants. Plaintiff alleged that Defendants violated the Fourth and Fourteenth Amendment of the United States Constitution. Plaintiff alleged that she was unlawfully detained by Cunningham, Estrada, Sarrasin and Murphy (Count I); that Cunningham, Estrada, Sarrasin and Murphy failed to intervene to stop the unlawful detention (Count II); that Smith and Schoolmeesters deprived her of due process by failing to investigate her internal affairs complaint (Count III); and a *Monell* claim against the City because it failed to have adequate policies or failed to promulgate policies. (Count IV). Plaintiff

seeks compensatory damages, attorney's fees, costs, and punitive damages against each individual Defendant.

## SUMMARY OF COMPLAINT

On **March 17, 2021**, Robledo called the police to report that a man armed with a rifle was on a balcony of a building within her apartment complex.  The City dispatched Officer Estrada ("Estrada") and Officer Cunningham ("Cunningham") in response to the call.  The officers arrived at the location and did not encounter or find anyone armed with a gun. The Plaintiff observed the officers' arrival and the fact that they did not find or encounter anyone with a gun. *Complaint*, ¶ 29-41. After the officers left the complex, Plaintiff called the City to complain that the officers had failed to find the man with the rifle. The City had the officers return to the complex. *Complaint*, ¶ 42, 44. Estrada called Plaintiff to ask her to provide more information regarding the location of the suspicious person and Plaintiff declined to provide more information. *Complaint*, ¶ 48-50.

When Estrada and Cunningham arrived at the complex the second time, they went to Plaintiff's apartment. Estrada knocked on the door and when Plaintiff opened the door her dog escaped. As the dog exited the apartment, Cunningham fired two shots and struck the dog. *Complaint*, ¶ 9-12, 52-53. After the shooting occurred, Officer Sarrasin ("Sarrasin") and Sgt Murphy ("Murphy") came to the scene. Plaintiff alleged that Estrada, Cunningham, Sarrasin and Murphy prevented her from leaving the

2

complex for 12 minutes which prevented her from obtaining medical treatment for her dog. *Complaint*, ¶ 111.

On **March 26, 2021,** Plaintiff filed an Internal Affairs Complaint online against Estrada, Cunningham, Sarrasin and Murphy. The complaint was assigned to Detective Neal Smith ("Smith"). *Complaint*, ¶ 154. Approximately one week after the online complaint, Plaintiff noted that the status of her complaint indicated that it was closed. *Complaint*, ¶ 157. Plaintiff inquired online about the closure and received a response from . On **April 7, 2021**, Plaintiff spoke to Smith. Plaintiff also emailed Smith and copied Schoolmeesters, who was Smith's supervisor. *Complaint*, ¶ 160. On **May 12, 2021**, Plaintiff emailed Smith and Schoolmeesters a second time about her complaint. *Complaint*, ¶ 161. On **June 3, 2021**, Smith conducted a recorded telephonic interview with Plaintiff. On **October 4, 2021**, Plaintiff received an email from Schoolmeesters that indicated that her complaint was closed and provided her with some documents. *Complaint*, ¶ 162. On **October 6, 2021**, Robledo emailed Schoolmeesters, but Schoolmeesters did not respond to the email. *Complaint*, ¶ 169.

MEMORANDUM OF LAW

**Standard of Review**

When considering a motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. *Hill v. White*, 321 F. 3d

3

1334, 1335 (11th Cir 2003); *Jackson v. Okaloosa County, Fla.,* 21 F. 3d 1531, 1534 (11th Cir. 1994). A Complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lopez v. First Union Nat'l Bank,* 129 F.3d 1186, 1189 (11th Cir. 1997) *(*quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations which, when taken as true, "state a claim to relief that is plausible on its face". *Ashcroft v Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'shown'- 'that the pleader is entitled to relief." *Id* at 1950.

In Count IV Plaintiff alleged that the City is liable for the alleged violation of her constitutional rights. To prove a *Monell* claim Plaintiff must demonstrate that her constitutional rights were violated; that the municipality maintained a policy or custom that constituted deliberate indifference to her constitutional rights; and that the violation was caused by the policy or custom. *City of Canton v Harris*, 489 US 378, 388 (1989)  In paragraph 27, Plaintiff contends that the City is liable for the alleged constitutional torts based on the doctrine of respondeat superior. The City is not

vicariously liable for constitutional violations. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

Plaintiff must show that the City policy was the moving force behind the constitutional violation. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819-820 (1985). Municipal lability under § 1983 is not implicated unless Plaintiff demonstrates a constitutional violation occurred. *McDowell v Brown*, 392 F. 3d 1283, 1290 (11th Cir. 2004). Plaintiff contends that the City is liable because it ***negligently*** passed Estrada, Cunningham, and other officers, through the Field Training Program. *Complaint* ¶ 122, 141, 142, 148. Liability for a constitutional violation cannot be based on claims of negligence. *Daniels v. Williams*, 474 U.S. 327 (1986).

In **Count III**, Plaintiff alleged that Defendants, Smith and Schoolmeesters, violated her right to due process. Plaintiff contends that she had a constitutional right to an investigation of her complaint against Estrada, Cunningham, Murphy and Sarrasin. *Complaint* ¶ 191-192. Plaintiff does not specify whether she is making a substantive or procedural due process claim, but regardless of which is being alleged, the allegations do not state a cause of action. The Eleventh Circuit, in *Vinyard v. Wilson*, 311 F. 3d 1340, 1356 (11th Cir. 2002), determined that there is no constitutional right to an internal investigation of an officer's alleged misconduct. See also *Koger v. Florida*, 130 Fed. Appx. 327, 335 (11th Cir. 2005)

The factual allegations do not demonstrate that any substantive due process violation occurred. A substantive due process claim is derived from fundamental rights

5

inherent in the United States Constitution. *McKinney v Pate*, 20 F. 3d 1550, 1556 (11th Cir. 1994). Here, the Federal Constitution does not guarantee Plaintiff the right to have the City investigate her complaint against its employees. To prove a § 1983 claim alleging a denial of procedural due process requires proof of (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Arrington v. Helms*, 438 F. 3d 1336, 1347-48 (11th Cir. 2006). In assessing whether there has been a denial of due process a court must first decide whether the Plaintiff has been deprived of any legally recognized property or liberty interest. *Economic Dev. Corp v. Stierheim*, 782 F. 2d 952, 954-55 (11th Cir. 1986).

The police department's internal affairs/professional standards process is an internal administrative investigation procedure for sworn law enforcement officers. The investigative requirements are set forth in Florida Statutes § 112.531-112.534.[1] The investigation is to determine if an officer violated Department policy or the standards attendant to their State law enforcement certification. The administrative investigation is not an adversarial proceeding that adjudicates whether the officer has violated a citizen's rights. Thus, Florida law establishes procedural due process for the officer that is being investigated, and not the citizen that lodged the complaint. There is no Florida statute, law, regulation or rule that establishes the right of any citizen to an internal or administrative investigation of law enforcement officers. *Zipperer v City*

---

[1] The procedure set forth in Florida Statute is also contained in Tampa Police Department's, *Standard Operating Procedure 651—Administrative Investigations and Complaint Processing.*

*of Fort Myers*, 41 F. 3d 619, 623 (11th Cir. 1995)(explaining the property rights associated with procedural due process stem from an independent source such as state law). Plaintiff apparently contends that a full and complete investigation would have concluded that the officers violated Tampa Police policies and procedures, and that such determination would have resulted in the officers' discipline. However, Plaintiff does not have a right to, or property interest in, an internal investigation that could lead to employment consequences for a City employee.

Plaintiff contends that Schoolmeesters has a history of misconduct, as shown by *Bludsaw v. State*, 837 So. 2d 1188 (Fla. 2d DCA 2003). Plaintiff contends that Bludsaw held Schoolmeesters, and another officer, unlawfully detained an individual without reasonable suspicion. *Complaint*, 214. The Second District Court of Appeals found that Schoolmeesters had a legal basis to conduct a traffic stop of the individual because of the traffic violations they observed.[2] The Court found that any delay beyond the time necessary to write a citation for the traffic violations, was unreasonable in the absence of any reasonable suspicion that criminal activity was occurring. The Court found the extended detention was illegal and the individual's consent to search his vehicle which led to the discovery of the cocaine was involuntary. As a result, the Court determined that the individual's motion to suppress should have been granted. There is no connection between the Bludsaw traffic stop and the subject incident. Schoolmeesters was not present on the date of the incident, and Plaintiff did not allege

---

[2] The traffic stop occurred on November 15, 2000.

that he was involved in her detention. Therefore, the 2003 appellate opinion is not relevant to, or probative of, the claim in Count III against Schoolmeesters. Stated differently, there is no nexus between the 2003 opinion and the subject incident where Plaintiff contends that Schoolmeesters failed to investigate her complaint.

In paragraph 191, Plaintiff contends that the failure to investigate deprived her of "a fair proceeding" and "additional evidence that could be used to vindicate her rights". As explained above, the Professional Standards/Internal Affairs process is not an adversarial proceeding, and the investigation is designed to be fair to the officer being investigated.  Ultimately, a civil lawsuit is the appropriate vehicle to adjudicate whether any officer violated Plaintiff's rights, and any evidence that is necessary to support her claims is rightfully cultivated via the litigation discovery process. Even assuming the officers violated City policy, the mere fact that a policy violation occurred, standing alone, would not demonstrate that the officer violated Plaintiff's rights. *State v. Caceres*, 440 U.S. 741, 751-52 (1979)(holding that mere violations of agency regulations do not raise a constitutional question). *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007)(infringements of agency rules, regulations, policies or procedures do not, without more, amount to constitutional violations).  Since Plaintiff has not demonstrated that her Fourteenth Amendment rights were violated, Plaintiff has not stated a claim in Count IV against the City.

In **Count I**, Plaintiff alleged that she was temporarily and unlawfully detained by Cunningham, Estrada, Sarrasin and Muphy. The plaintiff contends that the detention was caused by inadequate City policies or alternatively the failure to

8

establish adequate rules and regulations. *Complaint* ¶ 200. The plaintiff contends that better policies regarding training of probationary officers; use of body worn camera; internal investigations; public records; and discipline would have prevented the alleged violation of her rights. *Complaint*, ¶ 200.

The factual allegations allow an inference that Plaintiff was briefly detained, however the mere fact that a brief seizure occurred does not demonstrate that the Fourth Amendment was violated. *Whren v United States*, 517 U.S. 806, 809-10 (1996)(A temporary detention of an individual even if only for a brief period and for a limited purpose, constitutes a seizure within the Fourth Amendment). The Fourth Amendment does not prohibit every seizure, only those that are not reasonable. *United States v. Gonzalez*, 995 F. 3d 1297, 1303 (11th Cir. 2021). In deciding whether police detention of potential witnesses is reasonable, the Court should consider "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *Brown v Texas*, 443 U.S. 47, 51 (1979)

Here, an officer had discharged their weapon and City protocol required a supervisor response and mandated an investigation.[3] Because Plaintiff was involved in the shooting, in that it was her dog that was shot and she witnessed the shooting, Estrada asked Robledo to stay.  When Sarrasin arrived, she spoke to Plaintiff, an involved party, to leave the scene. Assuming that each officer was familiar with the

---

[3] The protocol for officer involved shootings is set forth in Tampa Police Department's *Standard Operating Procedure 306—Required Investigations of Incidents Involving Shootings, Death or Deadly Force.*

shooting protocol, the Court cannot reasonably infer that any of the officers would have, or should have, perceived that Plaintiff was being unlawfully detained. Further, considering the shooting protocol, it would not be obvious that asking Plaintiff to stay, would violate her rights.  Plaintiff contends that Estrada asked for her name and date of birth and the supervisor (Murphy) sought the same information during the detention. Determining whether a witness to the shooting was cleared to leave the scene of the shooting was an important public interest considering the mandatory investigation and the police department's goal to be thorough and transparent in its investigation of officer involved shootings.

Although detention of a witness is different from a detention associated with criminal activity, there is no case law that sets a firm time limitation on either type of detention.  The United State Supreme Court found a 20-minute *Terry* stop reasonable. See *United States v Sharpe*, 470 U.S. 675, 685 (1985) The Eleventh Circuit found 30-minute *Terry* stops reasonable.  See *United States v Acosta*, 363 F. 3d 1141, 1147 (11th Cir 2004); *Courson v. McMillan*, 939 F. 2d 1479, 1492 (11th Cir. 1991).  The Eleventh Circuit found a 15-to-20-minute detention reasonable. *United States v Sampson*, 388 Fed. Appx 950 (11th Cir. 2010).  The Eleventh Circuit found a 17-minute detention reasonable. *United States v. Hernandez*, 418 F. 3d 1206 (11th Cir. 2005). The District Court for the Middle District of Florida found a 15-minute detention reasonable.  See *United States v. Farmer*, 2008 WL 2397597 (M.D. Fla. June 2008).

The 12-minute delay alleged in this case was minimally intrusive and brief, in that the Plaintiff was able to get into the back seat of her car, was not asked to get out

10

of her car, was not handcuffed, was not placed in the back of a police car, and ultimately was allowed to leave the scene to secure medical care for her dog. The Plaintiff's desire to leave the scene to secure medical care for her dog was a compelling reason to leave, but it is not, nor should it be, dispositive of whether the detention was reasonable. That is to say that even if the Court finds that asking Plaintiff to stay at the scene, beyond the time it took for the police to obtain her name and contact information, the Eleventh Circuit has repeatedly found, in the context of excessive force claims, that unnecessary and *de minimis* conduct can still be reasonable under the Fourth Amendment. See *Nolin v. Isbell*, 207 F. 3d 1253 (11th Cir. 2000).

The Complaint allows the reasonable inference that some portion of the delay was centered around Sarrasin's mistaken belief that Tampa Fire Rescue could render aid to the dog. Even if Sarrasin's assumption that the paramedics could help Plaintiff's dog was wrong, it wasn't unreasonable for Sarrasin to ask the paramedics to assist. *Complaint*, ¶ 85-86, 90-91, 96-101.  If Sarrasin tried to obtain medical care for the dog, it further demonstrates that no officer was intentionally and consciously trying to violate Plaintiff's Fourth Amendment rights. Further, based on when Plaintiff began to feel like she was being detained, it is arguable that the detention was seven (7) minutes instead of 12 minutes. *Complaint* ¶102.

Regardless of whether Plaintiff was detained for 7-minutes or 12-minutes, the brief detention of a potential witness was not unreasonable when compared to longer detentions, associated with criminal activity, that the Courts have previously

11

determined did not violate the Fourth Amendment. In sum, the brief detention that occurred in this case was de minimis and not unreasonable.

Even if Plaintiff has shown a constitutional violation, Plaintiff has failed to demonstrate that the City's policies caused the violations. To demonstrate municipal liability, Plaintiff must demonstrate that the City knew, or should have known, that policies were inadequate or that it needed to have certain policies. *Wright v. Sheppard*, 919 F. 2d 665, 674 (11th Cir. 1990) Plaintiff cannot demonstrate deliberate indifference if the City did not have notice. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). Plaintiff contends the City was aware of constitutional violations based on other incidents.

The Complaint does not state any facts that allow the Court to infer a prior pattern of unconstitutional conduct by Tampa officers that would have put the City on notice that it needed to have better policies in the areas cited by Plaintiff in paragraph 200 of the Complaint. *McDowell* v. *Brown*, 392 F. 3d 1283, 1290 (11th Cir. 2004)(It is generally necessary to show a persistent and wide-spread practice, and random acts or isolated incidents are insufficient). The Eleventh Circuit has repeatedly found that prior incidents must have **substantial** factual similarity to the facts at hand to be relevant to a deliberate indifference claim. *Mercado v. City of Orlando*, 407 F. 3d 1152, 1162 (11th Cir. 2005); *Gold,* 151 F. 3d 1351.

In the Complaint, the Plaintiff cites incidents in March 2022, April 2022, May 2022, April 2024, and December 2024, all of which occurred after March 2021. *Complaint* ¶ 205-210. Each of the cited instances occurred after the subject incident

12

and incidents that occurred after the subject incident cannot demonstrate "prior notice". Thus, Plaintiff must cite a pattern of incidents that occurred *before* March 2021 to prove that the City had "prior notice" of a need to have better policies to prevent constitutional violations. Second, even if the cited incidents occurred before March 2021, they are factually dissimilar to the subject case. For example, in paragraph 205, Plaintiff contends that the City settled with Robert Duboise in 2024. The Duboise case involved a person that a jury found guilty of murder, who was sentenced to 37 years in prison, based on witness testimony and dental forensic evidence. The plaintiff was not arrested, charged with a crime or sentenced to prison.  Therefore, the Duboise matter and this incident where Plaintiff was delayed for 12 minutes have no similarities.

The Plaintiff cited an incident with a former Chief of Police's alleged misuse of authority to avoid a traffic citation.  There are no allegations that any of the officers in this case misused or abused their authority for personal gain. Thus, the allegations about the former chief of police are also dissimilar to the facts of this case. *Complaint,* ¶ 206-209.  Plaintiff cited a shooting that occurred in December 2024, where a female officer shot man near Amalie Arena. *Complaint,* ¶ 210. Plaintiff cited to a newspaper article that indicates that the officer fired at the man who had threatened to shoot her and another officer. Notwithstanding that the December 2024 incident occurred more than three years after the subject incident, the only similarity between the subject incident and the December 2024 incident is gender of the officers and both discharged their weapons.

13

Finally, Plaintiff contends that the City needs better policies regarding public records. There are no allegations about public records in the Complaint, and there are no allegations that demonstrate how better public records policies would have prevented the alleged unlawful detention.[4] Plaintiff contends that the City needs better policies regarding Body Worn Camera. Other than a reference in paragraph 110 about Murphy not being equipped with a camera, there are no factual allegations that demonstrate how a better or different body worn camera policy would have prevented the alleged detention.[5]  The plaintiff has not shown  demonstrated a plausible claim that her constitutional rights were violated, and the claim against the City in Count IV should be dismissed.

For the foregoing reasons, the CITY OF TAMPA requests that this Honorable Court grant this motion; dismiss Count IV with prejudice; and render such other relief that the Court finds just and proper.

## Rule 3.01(g) Certification

The undersigned conferred with Plaintiff, via email, on **June 9, 2025** and Plaintiff opposes the motion and relief sought herein.

---

[4] Notably, Plaintiff references several public records in her Complaint such as direct quotes obtained from body cameras worn by Estrada and Cunningham; computer (MDT) conversations between officers; and field training records for Estrada and Cunningham.

[5] The Tampa Police Department has an extensive Body Worn Camera policy, *Standard Operating Procedure 609.9 —Body Worn Recording Equipment.*

14

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document has been filed on **June 13, 2025** with the Clerk of Court using the CM/ECF and has been served to Rachel Robledo, 32789 Eiland Boulevard, Unit 470, Wesley Chapel, FL 33545, TampaJusticeProject@gmail.com.

**ANDREA ZELMAN, CITY ATTORNEY**
**CITY OF TAMPA**

By:  /s/ Ursula D. Richardson
  Ursula D. Richardson
  Chief Assistant City Attorney
  FBN:  0064467
  315 E. Kennedy Boulevard, 5th Floor
  Tampa, FL  33602
  (813) 274-7205 Telephone
  (813) 274-8894 Facsimile
  Counsel for Defendants
  Email: Ursula.Richardson@tampagov.net
  Laytecia.McKinney@tampagov.net